**SALEH, et al., Plaintiff,**

v.

**TITAN CORPORATION, et al., Defendant.**

**No. 04 CV 1143 R(NLS).**

United States District Court, S.D. California.

March 21, 2005.

See, also, 353 F.Supp.2d 1087.

———

Susan L. Burke, Jonathan H. Pyle, Montgomery McCracken Walker and Rhoads, Philadelphia, PA, William J. Aceves, Law Office of William J. Aceves, San Diego, for plaintiffs.

J. William Koegel, Jr., John F. O'Connor, Steptoe and Johnson, Washington, D.C., Raymond J. Coughlan, Jr., Cathleen G. Fitch, Coughlan Semmer and Lipman, LLP, for CACI defendants.

## ORDER GRANTING MOTION TO TRANSFER ACTION

RHOADES, District Judge.

### I. Introduction

Defendants CACI International Inc., CACI Inc.-Federal, and CACI N.V. (collectively, "the CACI defendants") move to transfer this action to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a). For the reasons set forth *infra*, the motion is granted.

### II. Factual Background

Plaintiffs bring this action on behalf of themselves and others who have been detained in Iraqi prisons under the control of the United States. Plaintiffs seek to challenge, in the context of a class action, abuses which they contend have occurred in such prisons.

### III. Analysis

#### I. Motion to Transfer

The CACI defendants have the burden of demonstrating that a transfer is warranted pursuant to § 1404(a). *See Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 279 (9th Cir.1979). 28 U.S.C. § 1404(a) provides in relevant part:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Thus, the statute on its face has two requirements: (1) that the district to which the defendant seeks to have the action transferred is one in which the action "might have been brought," and (2) that the transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The purpose of § 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense ....'" *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. The Barge FBL–585*, 364 U.S. 19, 26, 27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)).

It is undisputed that this action could have been brought in the Eastern District of Virginia. Thus, the court turns to the issue of whether this action should be transferred to the Eastern District of Virginia "[f]or the convenience of parties and witnesses, in the interest of justice."

 Section 1404(a) "displaces the common law doctrine of *forum non conveniens*" with respect to transfers between federal district courts. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986). Section 1404(a) is not, however, a mere codification of that common law doctrine. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 31–32, 75 S.Ct. 544, 99 L.Ed. 789 (1955). By passing § 1404(a), Congress "intended to permit courts to grant transfers upon a lesser showing of inconvenience" than was need-

ed for dismissal under the doctrine of *forum non conveniens*. *Id.* at 32, 75 S.Ct. 544. "This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader." *Id.; see also Decker Coal*, 805 F.2d at 843 (explaining that in deciding whether to grant a motion pursuant to § 1404(a), courts look to *forum non conveniens* factors). Relevant factors to consider in determining whether to transfer this case pursuant to § 1404(a) include: (1) the plaintiffs' choice of forum; (2) the extent to which there is a connection between the plaintiffs' causes of action and this forum; (3) the parties' contacts with this forum; (4) the convenience of witnesses, (5) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (6) the ease of access to sources of proof; (7) the existence of administrative difficulties resulting from court congestion; (8) whether there is a "local interest in having localized controversies decided at home"; (9) whether unnecessary problems in conflict of laws, or in the application of foreign law, can be avoided; and (10) the unfairness of imposing jury duty on citizens in a forum unrelated to the action. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir.2000); *Decker Coal*, 805 F.2d at 843; 28 U.S.C. § 1404(a).

**Plaintiff's choice of forum and material contacts with the forum**

■ "The courts have developed a bewildering variety of formulations on how much weight is to be given to plaintiff's choice of forum." 15 Wright, Miller and Cooper, Federal Practice & Procedure § 3848 at 375. "These various forms of words on the weight to be given plaintiff's choice of forum are an attempt to verbalize the burden that defendant must carry in order to persuade the court that transfer should be granted." *Id.* at 383. As a

leading commentator has explained, although numerous cases can be found stating that "the balance of convenience must be strongly in favor of the moving party before a transfer will be ordered," these cases are following language from *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), which was a *forum non conveniens* case. 15 Wright, Miller and Cooper, at 389, 391. As noted *supra, forum non conveniens* is a dismissal doctrine, and the Supreme Court in *Norwood* explained that by passing § 1404(a), Congress "intended to permit courts to grant transfers upon a lesser showing of inconvenience" than was needed for dismissal under the doctrine of *forum non conveniens*. *Norwood*, 349 U.S. at 42, 75 S.Ct. 544; 15 Wright, Miller and Cooper, at 392. Thus, "it is possible to think, as some courts have, that this common formulation [regarding the weight to be accorded the plaintiff's choice] overstates the showing required." 15 Wright, Miller and Cooper, at 391; *see Y4 Design, Ltd. v. Regensteiner Pub. Enterprises, Inc.*, 428 F.Supp. 1067, 1070 (S.D.N.Y.1977) ("Plaintiffs' choice of forum, while still an important factor in the determination of a motion to transfer, is no longer given the overriding consideration it may have once enjoyed under the former doctrine of *forum non conveniens* .... Other factors are now given equal consideration especially when plaintiff brings suit outside his own home forum.") (internal citations omitted); *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 990 (E.D.N.Y.1991) ("It has been observed, however, that since the result under section 1404(a) is that the action is merely transferred and not dismissed as with a *forum non conveniens* motion, the plaintiff's choice of forum is not accorded any great significance in the analysis."); *Georgouses v. NaTec Resources, Inc.*, 963 F.Supp. 728, 730 (N.D.Ill.1997) ("While

plaintiff argues that his choice of forum should be afforded substantial deference, it is 'simply one factor among many to be considered.'") (quoting *Club Assistance Program, Inc. v. Zukerman,* 598 F.Supp. 734, 736 (N.D.Ill.1984)). Unfortunately, by the time *Norwood* was decided

> there were so many cases saying a transfer can be granted only if the balance is strongly in favor of the moving party that they had a momentum of their own, and later cases have cited and quoted them often without recognizing that the original source of this theory was in connection with *forum non conveniens,* and that application of the theory to § 1404(a) is very doubtful.

15 Wright, Miller and Cooper, at 392.

Although the Ninth Circuit in *Decker Coal* appears to have joined the ranks of those courts who continue to follow language from earlier *forum non conveniens* cases by stating that a "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum," 805 F.2d at 843, in that case the plaintiff, a mining company, brought a breach of contract action in the state in which it was engaged in mining operations and in which its claim arose. Thus, *Decker Coal* does not speak to a defendant's burden where, as here, foreign plaintiffs seek to litigate a class action involving claims that did not arise in the chosen forum.

As recognized by the Ninth Circuit, the Supreme Court has explained in the context of a motion to dismiss on *forum non conveniens* grounds that " 'a foreign plaintiff's [forum] choice deserves less deference' than the forum choice of a domestic plaintiff." *Ravelo Monegro v. Rosa,* 211 F.3d 509, 514 (9th Cir.2000) (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 256, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). Given that the standard for transfer is more easily met than the standard for dismissal on *forum non conveniens* grounds, it is equally appropriate to give less deference to a foreign plaintiff's forum choice where transfer is sought pursuant to § 1404(a).

Moreover, the Ninth Circuit, like other courts, has noted that the weight to be given the plaintiff's choice of forum is discounted where the action is a class action. *See Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir.1987) ("[W]hen an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight.") (citing *Helfant v. Louisiana & Southern Life Ins. Co.,* 82 F.R.D. 53, 58 (E.D.N.Y.1979) and *Stolz v. Barker,* 466 F.Supp. 24, 27 (M.D.N.C.1978)); *see also Georgouses,* 963 F.Supp. at 730 ("[B]ecause plaintiff alleges a class action, plaintiff's home forum is irrelevant.").

In addition, numerous courts have given less deference to the plaintiff's choice of forum where the action has little connection with the chosen forum. *See Cain v. New York State Bd. of Elections,* 630 F.Supp. 221, 227 (E.D.N.Y.1986) ("The Court notes that, while it respects Fahy's right as a plaintiff to file suit in a forum of his choosing, this choice is not entitled to the weight generally accorded such a decision where there is lacking any material connection or significant contact between the forum and the events allegedly underlying the cause of action."); *Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 990–91 (E.D.N.Y.1991) (giving "less significance" to the plaintiff's choice of New York as a forum where the accident occurred in Florida and most of the witnesses were there and the only connection with New York was that the plaintiff resided in New York and received treatment there); *Helfant v. Louisiana & Southern Life Ins. Co.,* 82 F.R.D. 53, 57 (D.C.N.Y.1979) ("Since the operative facts underlying the alleged cause of action have no material

connection whatsoever with this forum, plaintiff's choice of forum is a less weighty consideration."); *Chrysler Capital Corp. v. Woehling*, 663 F.Supp. 478, 482 (D.Del. 1987) ("[W]hen the plaintiff chooses a forum which has no connection to himself or the subject matter of the suit, and is thus not his 'home turf,' the burden on the defendant is reduced and it is easier for the defendant to show that the balance of convenience favors transfer."); *Boyd v. Snyder*, 44 F.Supp.2d 966, 970 (N.D.Ill. 1999) ("When the conduct and events giving rise to the cause of action did not take place in the plaintiff's selected forum, the plaintiff's preference has minimal value even if it is his home forum.") (quotations and citations omitted); *Sierra Club v. Flowers*, 276 F.Supp.2d 62, 67 (D.D.C. 2003) ("When the connection between the controversy, the plaintiff, and the chosen forum is attenuated, the court pays less deference to plaintiffs' choice of forum.").

Plaintiffs admit that "[g]iven the national and international scope of these corporations' actions, there is no single location in the United States where this case 'arose' or 'naturally' should have been brought.' " Plaintiffs' Opposition To CACI Defendants' Motion to Transfer at 1:6–8. Nonetheless, in an attempt to demonstrate that their claims have a material connection to this district, plaintiffs cite to various paragraphs of the complaint. However, even assuming the truth of the allegations in the complaint, there is no basis for concluding that plaintiffs' claims have a *material* connection with this district.

For example, plaintiffs' reliance on ¶¶ 58 through 60 of the Second Amended Class Action Complaint ("SACAC") for the proposition that their claims have a material connection with this forum is unavailing, as these paragraphs simply allege that defendants did not properly train and supervise persons conducting interrogation services.

Given that the interrogation services were being provided in Iraq, it does not follow that the alleged failure to train and supervise occurred in the Southern District simply because Titan is headquartered here. In fact, plaintiffs allege in ¶ 59 of the SACAC that "Defendant Titan acknowledged that it was responsible for supervising its employees *located in Iraq*." (emphasis added). Similarly, plaintiffs allege in ¶ 61 that "[t]he CACI Corporate Defendants admit on their website that Interrogators and other employees *in Iraq* work under 'minimal supervision' or 'moderate supervision.' " (emphasis added). From these allegations one could conclude that the failure to supervise occurred in Iraq, not in the Southern District of California.

Plaintiffs also point to ¶¶ 86 and 87 of the SACAC; however, ¶ 86 simply alleges that defendants screened potential applicants in "California, Virginia and other locations throughout the United States . . . ." This paragraph does not establish a material connection with this district that would suggest that greater weight should be afforded plaintiffs' choice of the Southern District of California. Although plaintiffs allege one count of negligent hiring and supervision, the crux of this case is the allegation that defendants conspired to torture Iraqis in Iraq. *See* SACAC ¶ 80 ("Defendants and certain government officials conspired and formed an ongoing criminal enterprise designed to flout the United States domestic and international laws prohibiting the torture, abuse, and other mistreatment of the Plaintiffs . . . ."); Counts I and II, ¶¶ 172–194 (describing an alleged RICO conspiracy, the predicate acts of which included "acts and threats of murder, assault and abuse, kidnapping, and obstruction of justice" and describing the victims of the conspiracy as "all detainees who have been killed, tortured, abused, or otherwise mistreated" by defendants and their alleged co-conspirators); Counts

III through IX, ¶¶ 195–247 (alleging cause of action predicated upon the mistreatment, execution, torture, "enforced disappearance," and arbitrary detention of detainees in Iraqi prisons in violation of the Alien Tort Claims Act); Count X ¶¶ 248–253 (alleging that the torture, abuse and mistreatment of detainees in Iraqi prisons violated the Third and Fourth Geneva Conventions and seeking to hold defendants liable for such violations); Count XI, ¶¶ 254–259 (alleging that Iraqi detainees were imprisoned within the meaning of the Eighth Amendment and subjected to cruel and unusual punishment); Count XII, ¶¶ 260–265 (alleging deprivation of life and liberty without due process of law); Count XIII, ¶¶ 266–271 (alleging violation of the Fourth Amendment); Counts XV to XVIII, ¶¶ 278–298 (alleging the assault, sexual assault, battery, false imprisonment, and wrongful death of Iraqi detainees); Counts XIX, ¶¶ 299–302 (alleging the intentional and negligent infliction of emotional distress on Iraqi detainees); *see also* Opposition to CACI Defendants' Motion to Transfer Venue at 14:13–15 ("At issue in the suit, essentially, are the policies of the defendant corporations and the United States government in interrogating and detaining detainees"). The alleged detention, interrogation, torture and abuse of the detainees in this case undisputably occurred in Iraq.

Plaintiffs cite to various paragraphs in the SACAC that allege that defendant The Titan Corporation ("defendant Titan"), which is headquartered in the Southern District of California, earned additional profits as a result of its allegedly illegal conduct and invested the fruits of that conduct in its ongoing operations. Plaintiffs also point to the fact that the CACI entities have offices in the Southern District of California and that the CACI defendants and defendant Titan worked together on a contract relating to intelligence services. While it certainly cannot be disputed that the defendants, one of which is headquartered here, have some connections with the Southern District of California, plaintiffs have failed to demonstrate that *their claims* have a *material* connection with this district, as, again, the crux of this case is the allegation that defendants entered into a conspiracy to torture and otherwise mistreat Iraqis in Iraq.

Finally, while the SACAC alleges upon information and belief that "government officials and senior management in Defendant Titan and CACI Corporate Defendants had relationships that assisted in the formation and implementation of" the alleged conspiracy which relationships "were formed and fostered by meetings, telephonic discussions, in-person discussions, email discussions and other communications that occurred in, among other places, California, Virginia and the District of Columbia," SACAC ¶ 83, such contacts with this district arise merely because of the fact that defendant Titan happens to be headquartered in this district and the CACI defendants happen to have offices here. Such contacts do not demonstrate that plaintiff's claims have a material connection with this district.

### Convenience of the parties

█ Plaintiffs are residents of Iraq, not the Southern District of California. Defendant Titan is headquartered in the Southern District of California but has offices in the District of Columbia and Virginia. Titan's Operational Support Group, which supervises Titan's linguist operations worldwide, is located in Reston, Virginia. *See* Titan's Opposition to Plaintiffs' Motion to Enjoin Duplicative Action at 7:19–21 (filed October 18, 2004). Defendant Titan does not oppose the transfer. Defendants CACI International Inc. and

CACI Inc.-Federal have their principal places of business in the Eastern District of Virginia. *See* Declaration of Jeffrey P. Elefante in Support of Motion by [CACI Defendants] to Transfer Venue. Defendant Stefanowicz is apparently a resident of Pennsylvania and defendant Nakhla is apparently a resident of Maryland. Neither opposes the motion, and both states are significantly closer to the Eastern District of Virginia than to the Southern District of California. Although defendant Israel is alleged to be a resident of California, he has been redeployed to Iraq. Therefore, this district is not necessarily more convenient for him than the Eastern District of Virginia. Given the geographical location of all of the parties, and the lack of objection to a change of venue by defendant Titan or the individual defendants, the court concludes that it would be significantly more convenient for the parties in this action to litigate in the Eastern District of Virginia.

The court notes that plaintiffs rely on *Ravelo Monegro* for the proposition that this district, which is defendant Titan's home forum, is the "quintessentially convenient forum." While the Ninth Circuit in *Ravelo Monegro* did note in passing that "foreign plaintiffs typically bring such suits in the quintessentially convenient forum for the defendant—the defendant's home forum," 211 F.3d at 513, *Ravelo Monegro* is not authority for the proposition that the Southern District of California is the quintessentially convenient forum here, nor is it authority for the proposition that the CACI defendants' motion to transfer should be denied. In *Ravelo Monegro*, the plaintiffs, aspiring professional baseball players living in the Dominican Republic, brought suit against the San Francisco Baseball Associates and others in California. The district court dismissed the action on *forum non conveniens* grounds, concluding that the Dominican Republic

was a better forum. The Ninth Circuit reversed. First, it noted that the plaintiffs' chosen forum was "more than merely the American defendants' home forum. It is also a forum with a substantial relation to the action." *Id.* at 513–14. Second, it noted that there were "no possible co-defendants or third-party defenses who could not be made to appear in the American forum." *Id.* at 514. In contrast, it was not clear that one of the defendants could be compelled to appear in a suit in the Dominican Republic. *Id.* Third, there was "no showing that access to proof ... would be easier in the Dominican Republic." *Id.*

Here, besides the fact that the court is confronted with a motion to transfer pursuant to § 1404(a) rather than a motion to dismiss on *forum non conveniens* grounds, this forum does not have a "substantial relation" to plaintiffs' action. Moreover, as will be seen, the CACI defendants have identified material witnesses who could not be compelled to appear in this forum, and there has been a showing that access to proof would be easier in the Eastern District of Virginia. Thus, *Ravelo Monegro* does not dictate a finding that it would be inappropriate to grant the CACI defendants' motion to transfer.

### Convenience of the witnesses

■ "The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)." *State Street Capital Corp. v. Dente*, 855 F.Supp. 192, 197 (S.D.Tex.1994). Importantly, "[w]hile the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor." *Aquatic Amusement Associates, Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y.1990) (internal citation omitted). In determining

whether this factor weighs in favor of transfer, the court must consider not simply how many witnesses each side has and the location of each, but, rather, the court must consider the importance of the witnesses. *State Street Capital Corp.*, 855 F.Supp. at 198; *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335–36 (9th Cir.1984) (*forum non conveniens* case; concluding that "the district court improperly focused on the number of witnesses in each location" and should have instead "examined the materiality and importance of the anticipated witnesses' testimony and then determined their accessibility and convenience to the forum").

The CACI defendants have provided the declarations of four individuals who are not employees of the named CACI defendants, who reside in Virginia, and who appear to have first-hand, material knowledge of the events upon which this suit is predicated. For example, Harry Thornsvard was Division Group Senior Vice President with CACI Premier Technology, Inc. ("CACI PT") until he resigned on November 21, 2004. CACI PT, while related to the CACI defendants in this case, is not a named party to this suit. According to the declaration of Jeffrey Elefante, in May 2003, defendant CACI Inc.-Federal acquired most of the assets of the company formerly known as Premier Technology Group, Inc., headquartered in Chantilly, Virginia. These assets became the corpus of CACI PT. CACI PT provides personnel, including interrogators, in support of the United States military's mission in Iraq under a contract issued directly to CACI PT by the United States Army. Mr. Thornsvard works and resides within the borders of the Eastern District of Virginia. In his role as a Senior Vice President with CACI PT, Mr. Thornsvard "oversaw CACI PT's provision of government contractor services, including interrogation services, on a daily basis." He "had regular contact

with the CACI PT country managers who provided administrative support to the CACI PT Employees working in Iraq, as well as with the United States government officials, both in Iraq and in the United States, who monitored, supervised, and oversaw CACI's provision of civilian contracting services in support of the United States military's mission in Iraq." Mr. Thornsvard could testify that "neither the CACI Defendants nor any affiliates or subsidiaries thereof entered into any conspiracy with United States government officials, The Titan Corporation, or any other person or entity to abuse detainees in Iraq," that "the CACI Defendants and their affiliates and subsidiaries did not coordinate in any way with The Titan Corporation in obtaining contracts from the United States government to provide interrogation services in support of the United States military's mission in Iraq," that "the CACI Defendants and their subsidiaries and affiliates have not encouraged abuse of detainees in Iraq by any person and have condemned the abuses that have been portrayed in the media," and that "the CACI Defendants and their subsidiaries and affiliates did not, and do not, support the treatment of detainees in Iraq in any manner that is inconsistent with applicable law."

Charles Mudd is a Division Vice President with CACI PT who works and resides within the borders of the Eastern District of Virginia. Mr. Mudd "learned of the United States military's need for civil interrogators in Iraq" and was the one "who suggested to the United States military that CACI could provide civilian interrogators to support the United States military's mission in Iraq." Mr. Mudd "regularly communicate[s] with the CACI personnel designated as country managers for the various contracts under which CACI provides civilian contractor support

to the United States military in Iraq." Mr. Mudd could testify regarding "[t]he manner in which CACI PT obtained its initial contract to provide interrogators in support of the United States military's mission in Iraq." Mr. Mudd could also testify that "there was no coordination between the CACI Defendants or any of their affiliates or subsidiaries and Defendant The Titan Corporation during the process by which a subsidiary of CACI International, Inc. obtained a contract from the United States government to provide interrogators to support the United States military's mission in Iraq" and that "the CACI Defendants and their affiliates and subsidiaries did not obtain their contracts from the United States government to provide interrogation services in support of the United States mission in Iraq as part of any corporate strategy to build a capacity and demand for interrogation services."

John Hedrick was employed by CACI PT as a Business Group Executive Vice President until his retirement on October 3, 2004. Although Mr. Hedrick resides within the boundaries of the Western District of Virginia, he lives only two hours from the Alexandria courthouse in the Eastern District of Virginia. Mr. Hedrick had regular oversight of CACI PT's provision of civilian contractors in support of the United States military's mission in Iraq, including the civilian interrogators employed by CACI PT who deployed to Iraq. Mr. Hedrick could provide testimony along the lines of that which would be provided by Mr. Thornsvard.

Finally, Scott Northrop, who resides within the borders of the Eastern District of Virginia, is employed by CACI PT and from November 16, 2003 to November 26, 2004 was CACI PT's country manager in Iraq. In that role, Mr. Northrop monitored CACI PT's provision of interrogators in support of the United States military's mission in Iraq. Mr. Northrop explains that "[a]lthough these interrogators were under the operational control of the United States Military," he "was their administrative manager and regularly met and communicated with CACI PT interrogators in Iraq." He also "regularly interfaced with the members of the United States military responsible for overseeing CACI PT's interrogation contracts with the United States military." Mr. Northrop could testify that "neither CACI PT not the CACI Defendants conspired with the United States government or with The Titan Corporation to abuse persons detained by the United States military in Iraq" and that "CACI PT expected its interrogators to comply with all applicable laws in performing their duties in Iraq, and that CACI PT communicated that expectation to its interrogators."

Clearly, these four witnesses have material, first-hand knowledge regarding the seminal issues in this case, and because they live and reside in or near the Eastern District of Virginia, the Eastern District of Virginia would be a more convenient forum.

Plaintiffs' reliance on *Cochran v. NYP Holdings, Inc.*, 58 F.Supp.2d 1113 (C.D.Cal.1998) for the proposition that defendants must affirmatively assert that their witnesses would be unable to travel to the plaintiff's chosen forum is unavailing. In *Cochran*, the defendants "broadly state[d] that 'most of the relevant witnesses that would be called upon to provide testimonial evidence and any documentary evidence'" were located in New York, and the witnesses were only generally identified as employees of the defendant corporation. *Id.* at 1119–20. The court explained that "[t]his description utterly fails the particularity requirement set forth in" *Commodity Futures Trading Comm'n*, 611 F.2d at 279. *Cochran*, 58

F.Supp.2d at 1120. Although the court noted that the defendant did not "assert that their witnesses would be unable to travel to California to defend suit here," it also stated that the defendant did not "demonstrate that the convenience of parties and witnesses, and the interests of justice, favor such transfer." *Id.* It explained:

> In this case, either plaintiff and his witnesses will travel to New York, or Defendants and their witnesses will travel to California. A transfer will not be ordered if the result is merely to "shift" the inconvenience from one party to another.

*Id.* (citation omitted).

Here, unlike in *Cochran,* defendants have specifically identified their witnesses by name and have presented a detailed description of the testimony it is anticipated that they will provide. In addition, as detailed throughout this order, defendants have demonstrated that the convenience of the parties and witnesses and the interests of justice do favor a transfer. This is sufficient to warrant a transfer pursuant to § 1404(a).

Plaintiffs' reliance on *Aquatic Amusement Associates* is similarly unavailing. In determining that a transfer was not appropriate, one factor the court considered was the fact that the defendant did not provide "any details concerning the length of the testimony which may be required of its witnesses, the impact of their absence on the corporate offices, or the relationship of their testimony to the issues in this case," while the plaintiff asserted that "its six witnesses are high corporate officials whose absence from northern New York for a long period of time would be detrimental to [its] ongoing business activities." 734 F.Supp. at 58. However, the court in *Aquatic Amusement* did not hold that a defendant seeking a transfer of venue must affirmatively assert that its witnesses would be unable to travel to the chosen forum to litigate in order to prevail on a motion to transfer.

Finally, the court will not, as plaintiffs urge, discount defendants' showing of inconvenience for its witnesses, who all work and reside on the East Coast, simply because defendants have failed to state the obvious: that it would be more convenient for these witnesses to appear in a courtroom in the Eastern District of Virginia than in the Southern District of California.

In contrast to the CACI defendant's detailed witness declarations, plaintiffs present only two conclusory declarations of potential witnesses, Peter Bauer and Marney Mason. A review of these declarations reveals that both individuals were interrogators with the United States Army; however, neither declaration establishes the substance of the declarant's proposed testimony or otherwise establishes that the declarant could provide relevant testimony in this case. Neither of these witnesses resides in the Southern District of California, and each simply states that, if called as a witness, it would be "*as* convenient" for each to travel to the Southern District as it would be to travel to the Washington, D.C. area. (emphasis added)

Plaintiffs also provide a laundry list of individuals residing in California who they "may" call as witnesses. However, a review of this list does not change the conclusion that the Eastern District of Virginia is the most convenient forum for the important witnesses in this case. Not only are plaintiffs equivocal about whether they will call the individuals on their list, but plaintiffs have failed to demonstrate that any of these witnesses have important testimony.

Of the witnesses on this list of individuals residing in California who plaintiffs

"may" call, 9 of the 14 witnesses are employees of defendant Titan and the CACI defendants. As noted, the convenience of nonparty witnesses is more important than party witnesses. Moreover, plaintiffs have failed to outline the proposed testimony of these witnesses or give any suggestion that in fact these particular employees would have information relevant to this suit.

Plaintiffs identify members of SEAL Team–7, which conducted missions in Iraq and which are being tried for abusing detainees in Iraq; however, plaintiffs have failed to explain what connection these individuals have with the present case or give any suggestion as to what information these individuals might possess that would be relevant to the present case.

Plaintiffs also identify as a potential witness Staff Sergeant William Kimbro, a dog handler at Abu Graib prison who resides in San Diego and who plaintiffs contend could testify "regarding the use of dogs in interrogations at Abu Graib." However, having reviewed Plaintiffs' Exhibit 30, which is an interview of Staff Sergeant Kimbro, there does not appear to be any basis for concluding that Staff Sergeant Kimbro could provide any material testimony in this case, *i.e.*, testimony that would tend to establish a basis for defendants' civil liability for the treatment of prisoners at Abu Graib prison.

Plaintiffs identify as potential witnesses unspecified members of the 223rd Military Intelligence Battalion of the Army National Guard, based in San Francisco, California and the 250th Military Intelligence Battalion, based in San Rafael, California. Plaintiffs contend in a conclusory fashion that members of the 223rd are "likely to be called as witnesses regarding abuse of Iraqi prisoners in Samarra," while contending in a conclusory fashion that members of the 250th "are likely to have relevant information regarding interrogators and translators in Iraq." However, these vague characterizations of the members' possible testimony does not establish that these potential witnesses could provide important testimony.

Finally, plaintiffs also identify as a potential witness Spc. Luciana Spencer, who is identified in Plaintiffs' RICO Case Statement as a governmental co-conspirator. However, plaintiffs have failed to set forth the substance of Spc. Spencer's purported testimony. Moreover, even if the court was to conclude that the alleged government co-conspirators are likely to have testimony relevant to plaintiffs' claims, the convenience of all of the alleged governmental co-conspirators must be considered. Plaintiffs have identified alleged governmental co-conspirators in Arizona (2), Colorado (4), Kentucky (1), Maryland (3), New York (1), Pennsylvania (7), South Carolina (1), North Carolina (1), Texas (1), Virginia (3) and West Virginia (1). However, absent from plaintiffs' list are numerous other alleged governmental co-conspirators, including Secretary of Defense Donald Rumsfeld and Undersecretaries of Defense Douglas Feith and Steven Cambone, for whom the Eastern District of Virginia would clearly be a more convenient forum.[1] Considering the

---

1. In their March 9, 2005 letter to the court plaintiffs suggest that the convenience of these alleged governmental co-conspirators is irrelevant or should be given little weight; however, the convenience of these alleged governmental co-conspirators is at least as relevant as the convenience of the alleged governmental co-conspirators identified by plaintiffs as potential witnesses located in California. Moreover, plaintiffs suggest that the fact that lawsuits against Secretary of Defense Rumsfeld and three high-ranking military officials were recently filed in districts other than the Eastern District of Virginia raises a ques-

locations of all of the alleged governmental co-conspirators, the court concludes that the Eastern District of Virginia would be a more convenient forum. Although plaintiffs broadly contend that "[f]lying into San Diego is typically less expensive that flying to Washington, D.C." and that San Diego has a shorter check point wait time than the Dulles and Reagan airports, the court is unable to conclude that San Diego would be a more convenient forum for the alleged governmental co-conspirators plaintiffs identify, who hail from all over the country and who hail in large part from the east coast.

In summary, the CACI defendants have demonstrated that they have important witnesses with firsthand knowledge relevant and material to plaintiffs' allegations that defendants masterminded and/or implemented the alleged conspiracy, which witnesses are located in or very near the Eastern District of Virginia. On the other hand, plaintiffs have failed to demonstrate that there are any important witnesses located in the Southern District of California. Plaintiffs simply provide a list of witnesses they "may" call and fail to establish that these witnesses are likely to have information relevant and material to their case. At best, plaintiffs have identified some potential witnesses in California who may be able to testify generally to the alleged abuses of detainees in Iraq; however, it does not appear that any of these witnesses would be able to provide testimony that would tend to establish a basis for imposing civil liability against defendants for these abuses.

Moreover, to the extent that the testimony of governmental co-conspirators would be important in this case, a number of government officials who are alleged to be co-conspirators are located on or near the east coast, which suggests that the Eastern District of Virginia would be a more convenient forum.

Having considered not simply how many witnesses each side has and the location of each, but also the importance of the witnesses, the court concludes that the convenience of the witnesses factor weighs heavily in favor of transfer. *Cf. Hotel Constructors, Inc. v. Seagrave Corp.*, 543 F.Supp. 1048, 1051 (N.D.Ill.1982) ("In light of the crucial character of the non-party witnesses located in New York, this Court bases its order to transfer, in part, on the primary concern of insuring whenever possible the live presence of these material non-party witnesses.").

**The Availability of Compulsory Process to Compel Attendance of Unwilling Non–Party Witnesses**

■ Clearly, the current and former employees of non-party CACI PT, who have information material to this suit and who reside in the Eastern District of Virginia, would be beyond the reach of this court's subpoena power but not that of a court in the Eastern District of Virginia. *See* Fed.R.Civ.P. 45(b)(2). In contrast, plaintiffs have failed to identify a single important witness for their case who would be beyond the subpoena power of the district court in the Eastern District of Virginia. Plaintiffs broadly contend that California is home to more Arabic speakers than any other state and as a

---

tion as to whether that district would be most convenient. However, a review of the Motion to Transfer filed with the Judicial Panel on Multidistrict Litigation with respect to those cases reveals that these government officials were sued in other districts in order to satisfy the requirement of personal jurisdiction over

each defendant, not because the district was determined to be the most convenient for those defendants. *See* Memorandum in Support of Motion for Transfer Under 28 U.S.C. § 1407, submitted in conjunction with plaintiffs' March 9, 2005 letter, page 1.

result, defendant Titan recruited heavily in California. From this, plaintiffs conclude that the Southern District of California is preferable for purposes of compulsory process over unwilling non-party witnesses because a "large portion of California's Arabic speakers live in San Diego and surrounding areas and have relevant information about Titan's recruiting and operating practices." Opposition at 4:21–23. Plaintiffs' speculation that it will need compulsory process over unspecified Arabic-speaking individuals in the Southern District who may have information regarding practices of Titan that can be discovered by deposing Titan employees is insufficient to overcome the fact that defendants have identified specific individuals with relevant and important testimony over whom this court does not have subpoena power.

Moreover, given plaintiffs' allegations of a conspiracy between defendants and government officials, it is likely that the testimony of the alleged governmental co-conspirators will be important in this case. The alleged governmental co-conspirators are concentrated either in Iraq or at or near the Pentagon. The Pentagon is located in the Eastern District of Virginia, beyond the reach of this court's subpoena power. Given the nature of the allegations against these alleged governmental co-conspirators and the fact that some have already been sued in other actions pertaining to abuses in Iraqi prisons, there is no basis for concluding that these alleged governmental co-conspirators would be willing to testify absent a subpoena.

Accordingly, this factor weighs strongly in favor of transfer.

### Ease of Access to Sources of Proof

■ Plaintiffs contend that the CACI defendants have failed to "identify a single piece of evidence that would be unavailable to the parties if this case were to remain before this Court." Opposition at 13: 21–22. However, the issue is the "ease of access" to the sources of proof, not whether the evidence would be unavailable absent the transfer. As will be demonstrated, much of the documentary evidence in this case is more easily accessed from the Eastern District of Virginia.

Although plaintiffs characterize this lawsuit as a "challenge to corporate acts and omissions," Plaintiffs' Letter of March 9, 2005, the fact remains that crucial to this case is the allegation of a conspiracy between defendants and high-ranking government officials, including Donald Rumsfeld, Douglas Feith, Major General Geoffrey D. Miller, Stephen Cambone, Mark Jacobson, General Ricardo Sanchez, Lieutenant Colonel Jerry Phillabaum, Brigadier General Janis L. Karpinski, Colonel Thomas M. Pappas, Lieutenant Colonel Steven L. Jordan, Major David W. DiNenna, Sr., and others. *See* Plaintiffs' Rico Case Statement Filed Pursuant to Local Rule 11.1 ¶ 3. Plaintiffs allege that defendants, "together with the co-conspiring government officials, engaged in a systematic and extensive series of illegal acts that formed a pattern and practice of racketeering activity," including "kidnapping, assault including rape, acts and threats of murder, and murder." *See* Rico Statement at 7:12–16. Specifically, plaintiffs allege that the conspiring government officials "adopted and/or implemented 'Rules of Engagement' for Interrogations purporting to permit Interrogators to threaten detainees with death" and "adopted and/or implemented policies and practices that led to detainees being kidnapped, tortured, threatened with death and bodily harm, physically and mentally permanently disabled, and, in some cases, murdered." *Id.* at 4:11–17.

In light of these allegations, it appears clear that plaintiffs will need access to

sensitive documents concerning United States military policy toward detainees in Iraq as well as the United States military's interrogation records. Even if there is some dispute about whether such documents contain "sensitive compartmentalized information" ("SCI") that, absent an express waiver, must be maintained, and can only be viewed, in an SCI facility, there does not appear to be a dispute that such documents are in the possession of the Defense Department and other agencies located in and around the Eastern District of Virginia and are subject to that court's subpoena power.

Therefore, this factor weighs in favor of transfer to the Eastern District of Virginia.

**Miscellaneous factors**

■ Due to the docket congestion that the Southern District of California experiences, the Eastern District of Virginia is able to bring a civil case to completion in a significantly shorter amount of time than the Southern District of California.[2] Therefore, this factor weighs in favor of transfer. *See Gates Learjet Corp.*, 743 F.2d at 1337 ("The real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.").

It does not appear that there will be conflict of laws issues regardless of whether this action is transferred, and there will be no need for either forum to apply foreign law. Thus, this factor is neutral.

■ Finally, this is not a "localized controversy" that the Southern District of California has an interest in having decided here. Plaintiffs are not residents of this district, the alleged acts of abuse that underlie plaintiffs' claims did not occur in this district, and California does not have any significant interest in applying and interpreting its laws in this case. *Cf. Gates Learjet Corp.*, 743 F.2d at 1336 (concluding that the district court failed to properly weigh Arizona's interests in having the controversy "resolved at home" where Arizona had a significant interest in interpreting its own laws and "in protecting its companies from trademark infringement abroad to preserve the state's economic vitality"). Given the minimal contacts this jurisdiction has with this controversy, it would place an unnecessary burden on jurors in this district to hear this action. In contrast, if top government officials at the Pentagon were, as plaintiffs allege, involved in a conspiracy with defendants, the Eastern District of Virginia would have a strong interest in this action, and it would not be an undue burden for jurors in that district to decide this case. Thus, this factor weighs in favor of transferring this action.

**Conclusion**

■ Given that plaintiffs are foreign plaintiffs bringing a class action lawsuit in a district with which their claims have no substantial ties, plaintiffs' choice of this forum is entitled to less deference than it might otherwise be, and, accordingly, the CACI defendants have less of a burden of demonstrating that a transfer is warranted than they might otherwise have. Considering the location of the parties, the location of the witnesses the parties have identified and the importance of their testimony, the location of other evidence in this action and the ease of access to such evidence, and other facts such as the administrative difficulties resulting from

---

**2.** In 2004, the median time from the filing of a civil case until trial was 30 months for the Southern District of California and 9.2 months for the Eastern District of Virginia. *See www.uscourts.gov/cgi-bin/cmsd2004.pl.*

court congestion and the fact that this is not a localized controversy which this district has an interest in deciding, the court concludes that the CACI defendants have met their burden of demonstrating that a transfer is warranted "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).

### Timeliness

■■■ Plaintiffs alternatively argue that the motion to transfer should be denied because the CACI defendants unduly delayed in bringing the motion to transfer. Although the district court in *Los Angeles Memorial Coliseum Commission v. National Football League,* 89 F.R.D. 497, 500 (D.C.Cal.1981) noted that other courts have denied a motion to transfer where the defendant delayed five months or less in bringing the motion, that court was confronted with a delay of two years, and the Ninth Circuit has never held that a five month delay necessitates the denial of a motion to transfer. Furthermore, the cases cited by the court in *Los Angeles Memorial Coliseum Commission* for the proposition that a five-month delay is too long involved instances where the case had already been set for trial or the case has already been extensively litigated. *See McGraw–Edison Co. v. Van Pelt,* 350 F.2d 361, 363 (8th Cir.1965) (during the period of delay the plaintiff's counsel had extensively prepared for trial and had incurred expenses as a result); *Metropolitan Life Ins Co v. Potter Bank & Trust Co.,* 135 F.Supp. 645, 646–47 (D.C.Pa.1955) (denying motion for transfer where case was already set for trial and transfer would result in a 15–month delay); *Securities and Exchange Commission v. Savoy Industries, Inc.,* 587 F.2d 1149, 1156 (D.C.Cir.1978) (denying motion to transfer where case was set for trial and granting the motion would have delayed the trial); *Henry v. First Nat'l Bank of Clarksdale,*

50 F.R.D. 251, 270 (N.D.Miss.), *vacated on other grounds,* 444 F.2d 1300 (5th Cir. 1971) (denying transfer motion, filed three months after the filing of the original complaint, where several motions and preliminary injunction had already been decided; concluding that "[t]o grant a change of venue in the present posture of the case ... would entail unnecessary expense and result in the waste of time on the part of all parties concerned").

The present case is far from trial, particularly in this district. Moreover, the only motion the court has ruled on is one filed by plaintiffs in an attempt to enjoin an action in another district brought by other plaintiffs. It would not entail unnecessary expense or result in the waste of time on the part of the parties if the motion is granted. Thus, the court declines to deny the motion to transfer on timeliness grounds.

### II. Plaintiffs' Entitlement to Discovery

■■■ At the hearing on the motion to transfer and in response to a suggestion by the court, plaintiffs indicated that if the court was inclined to grant the motion to transfer they would like the opportunity to engage in discovery directed to the propriety of transfer. The court then ordered the parties to file supplemental papers on this issue.

In their supplemental papers, plaintiffs contend that they require additional discovery: (1) to establish that CACI's witnesses will not be unduly burdened by having to travel to California for this litigation; (2) to establish that the testimony from plaintiffs' potential third-party witnesses in San Diego is more material to the litigation than is the testimony of the witnesses identified by the CACI defendants; and (3) to establish that plaintiffs'

choice of forum should be accorded deference both because operative facts occurred in the district and because the parties have substantial connections to the district. Having reviewed the authorities cited by the parties, the court concludes that plaintiffs are not entitled to discovery.

There is scant published authority regarding whether a party is entitled to discovery directed toward the issue of transfer. In fact, none of the published cases plaintiffs cite hold that a plaintiff is entitled to conduct discovery directed solely at the issue of transfer prior to the court ruling on a motion to transfer. For example, the court in *PI, Inc. v. Valcour Imprinted Papers, Inc.*, 465 F.Supp. 1218 (S.D.N.Y.1979) simply noted in passing that limited discovery had been conducted prior to the ruling on the motion. The opinion cites no authority or rationale for allowing such discovery and it is not clear that the parties did not mutually agree that discovery was necessary in that case. Similarly, in *Combustion Engineering, Inc. v. NEI Int'l Combustion, Ltd.*, 798 F.Supp. 100 (D.Conn.1992) the district court denied the defendant's motion to transfer and simply noted that if the parties' subsequent discovery established that it would be more convenient for the witnesses to transfer the action, the defendant could renew its motion. Although not entirely clear, it appears that the court's reference to discovery was reference to merits-based discovery, not discovery solely directed toward the transfer issue. Nonetheless, the court did not, as plaintiffs seek to have the court do here, order limited discovery directed toward the issue of venue.

Plaintiffs characterize *Elec. Transaction Network v. Katz*, 734 F.Supp. 492 (N.D.Ga.1989) as denying as premature a motion to transfer but allowing the defendant to renew the motion after discovery related to ascertaining which witnesses would provide essential testimony. However, in actuality, the court denied the motion to transfer because it concluded that the defendant had not met his burden of demonstrating that a transfer was warranted because the defendant had not made a specific showing that certain witnesses were important to his case and because much of the suit concerned allegations of altered documentation and that documentation was as easily available in either forum. *See id.* at 502. Moreover, the court found that "many of the primary witnesses will be plaintiffs' officers and employees, located in Atlanta, and the documentation relied upon by plaintiff is located in Atlanta," and the court was unable to determine prior to discovery whether live witness testimony would be necessary at trial. *Id.* at 502. The court concluded that "[f]or these reasons, defendant has not demonstrated the specific showing necessary to meet his heavy burden to transfer venue ...." *Id.* The court then noted that "as it is possible that during discovery the number and importance of non-party witnesses may become clear, the court is willing to consider a renewal of this motion on a more specific and detailed showing by defendant." *Id.* The court did not, as plaintiffs ask the court to do here, stay a decision on the motion to transfer and order limited discovery directed at the issue of transfer. Rather, the court denied the motion because the defendant had not met his burden. It then simply noted that facts might be developed during merits discovery that might warrant the renewal of the motion to transfer.

Plaintiffs' characterization of the Third Circuit case of *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30 (3rd Cir.1970) is also misleading. Although the Third Circuit reversed and directed the district court to rule "after giving both parties an opportu-

nity to complete their discovery solely with respect to the question of transfer," *id.* at 31. *Polin* is not authority for the proposition that limited discovery is appropriate here. In *Polin,* the district court deferred ruling on a motion to transfer until completion of discovery on the merits. The appellants sought a writ of mandamus to compel the district court to rule on the transfer motion prior to the completion of discovery. The Third Circuit vacated the district court's order staying a decision on the motion to transfer, explaining that it was inappropriate to postpone consideration of the transfer motion until completion of discovery on the merits because such discovery would be irrelevant to the preliminary question of transfer. Although the Third Circuit noted that the parties could complete their discovery regarding the transfer issues, the Third Circuit did not pass on the issue of the propriety of such discovery in the first instance.

Plaintiffs reliance on *Kron Medical Corp. v. Groth,* 119 F.R.D. 636 (M.D.N.C. 1988) is equally unavailing. In *Kron,* the defendant filed a motion to transfer and requested a stay of all discovery. The district court denied the motion for stay of discovery for a variety of reasons. The court explained that "[a] motion to stay discovery is tantamount to a request for a protective order" and that "[m]otions for a protective order which seek to prohibit or delay discovery are not favored." *Id.* at 637. Although the court noted in passing that "prior to ruling on the motion to transfer, discovery may be required in order to identify and refine the issues pertinent to the transfer issue," *id.* at 638, the issue before the court was whether to stay discovery directed to the merits of the case pending resolution of the motion to transfer. Thus, *Kron Medical Corp.* provides little guidance here.

Finally, plaintiff's reliance on *Boustead v. Barancik,* 151 F.R.D. 102 (E.D.Wis. 1993) is unavailing. *Boustead* involved discovery undertaken in connection with a motion to dismiss for lack of jurisdiction. The issue was whether, based upon the location of its principal place of business, the defendant was a citizen of Illinois or Wisconsin. The test for determining the defendant's principal place of business required an examination of a number of factors. Noting that the plaintiffs had presented affidavits containing "some facts which call into question what the defendants claim the fact to be with respect to" its activities in Illinois and Wisconsin, the court explained that based on the parties' submissions, the question of fact as to the defendant's principal place of business was a close one. *Id.* at 105. The court also noted that the plaintiffs, as the ones invoking the court's jurisdiction, had "the burden of supporting the allegations of jurisdictional facts by competent proof." *Id.* Thus, the court granted the plaintiffs' request for discovery.

Here, defendants, not plaintiffs, have the burden of proof with respect to the pending motion to transfer. Moreover, the overriding issue with respect to the motion to transfer is one of convenience for the parties and their witnesses. If plaintiffs filed their SACAC in accordance with Fed. R.Civ.P. 11, then plaintiffs have some reason to believe that the allegations and other factual contentions in the SACAC have evidentiary support. Accordingly, plaintiffs should already have information in their possession regarding witnesses who can substantiate the allegations against defendants. Thus, unlike in *Boustead,* plaintiffs here are not faced with the prospect of trying to meet their burden of presenting evidence that is peculiarly within the defendant's possession. Moreover, none of the cases cited by plaintiffs suggest that a plaintiff faced with a motion for

transfer may embark on a fishing expedition in an attempt to find witnesses in support of its case or suggest that it is appropriate to allow discovery on an issue as trivial as whether witnesses will be inconvenienced by having to travel from the east coast to California for litigation.[3]

Because (1) the issue of whether plaintiffs are entitled to discovery was raised by the court, not plaintiffs, (2) defendants have the burden of proof, and (3) the resolution of the motion to transfer does not require consideration of facts that are peculiarly within defendants' possession, the court declines to allow plaintiffs to engage in additional discovery prior to the resolution of the motion to transfer. *See Wood v. Zapata Corp.*, 482 F.2d 350, 357 (3rd Cir.1973) (concluding that "there is no procedural rule or decisional authority requiring a district court to permit discovery in connection with a transfer motion or to postpone disposition of the transfer until completion of discovery proceedings").

## III. Conclusion

For the foregoing reasons, plaintiffs' request for discovery directed toward the transfer issue is **denied**. The motion to transfer venue is **granted**. **The Clerk of the Court shall transfer this action to the Eastern District of Virginia.**

**IT IS SO ORDERED.**

---

3. Although plaintiffs contend that the court cannot presume inconvenience, as noted *supra,* the case plaintiffs cite for this proposition does not so hold.