**ELECTRONIC TRANSACTION NETWORK, a Georgia corporation, Plaintiff,**

v.

**Jeffrey KATZ, d/b/a Electrical Sales Network, Defendant.**

**Civ. A. 1:89–CV–1095–JOF.**

United States District Court, N.D. Georgia.

Dec. 14, 1989.

need not be admissible in evidence. Fed.R. Evid. 703.

James Timothy White, Edward H. Nicholson, Jr., Hurt, Richardson, Garner, Todd & Cadenhead, Atlanta, Ga., for plaintiff.

Frank Andrews Lightmas, Jr., Atlanta, Ga., Josiah Greenberg, Stecher, Jaglom & Prutzman, New York City, for defendant.

ORDER

FORRESTER, District Judge.

This matter is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and insufficiency of service of process, Fed.R.Civ.P. 12(b)(1), (2), and (5), or, alternatively, to transfer venue to the Southern District of New York, under 28 U.S.C. § 1404(a). For the reasons discussed below, the motion is DENIED.

## I. STATEMENT OF THE CASE.

### A. *Complaint*

Plaintiff seeks a declaratory judgment under 28 U.S.C. § 2201 of the rights and liabilities under an "Independent Sales Organization" (ISO) agreement between the parties. Plaintiff, a Georgia corporation, is in the business of electronically clearing VISA and Mastercard credit card transactions for retail merchants. Complaint, ¶ 5. Retail merchants purchase plaintiff's telephonic terminals which are used to verify and confirm the credit card transaction. Plaintiff relies on independent sales organizations for its sales efforts to these retail merchants. Plaintiff and defendant entered an agreement in February of 1988 in which defendant would perform services of an independent sales organization primarily in the states of New York and New Jersey. Complaint, ¶ 7. Defendant was compensated by commissions and a percentage of the business done by each merchant. Complaint, ¶ 9. In April 1989, the plaintiff became aware of numerous alleged violations of the contract terms by the defendant. Complaint, ¶ 11.

The plaintiff informed defendant in April 1989 that the contract was terminated. Complaint, ¶ 12. Prior to termination of the contract, a dispute had arisen between plaintiff and defendant about non-payment by defendant of sums owed to plaintiff for equipment. Plaintiff withheld compensation for two months, in March and April, for a total of over $27,000. The defendant acknowledged a debt of over $11,000. Complaint, ¶ 13. The complaint states that the defendant has given notice of his intention to sue plaintiff for improperly terminating the contract, and for sums representing monthly residual payments in perpetuity based on sales commissions. Complaint, ¶ 14. The plaintiff asks this court to determine and adjudicate the rights and liabilities of the parties under the contract, and that the court find that the defendant has breached the contract and plaintiff properly terminated it, that plaintiff owes defendant no further compensation and that plaintiff properly withheld the March and April compensation as a set-off of defendant's debt. The complaint alleges that the defendant is a resident of the state of New York and is subject to the jurisdiction of this court pursuant to the Georgia long arm statute. Complaint, ¶ 3. The complaint has been amended as of right, to allege that the defendant is a citizen of the state of New York. First Amended Complaint. The complaint also alleges that the matter in controversy exceeds $50,000. Complaint, ¶ 4.

### B. *Affidavits*

In support of defendant's motion and plaintiff's response, the parties have submitted affidavits detailing certain facts as to service and jurisdiction.

#### 1. Service

Defendant states that on May 31, 1989 he returned to his office to vacate it, and found an envelope which apparently had been slipped under the door dated May 24, 1989, containing the summons and complaint in this action with an acknowledgement form. He did not return the acknowledgement form because before the time had run out to return the form, he was personally served on June 13, 1989. The summons stated that he had twenty days to answer or respond to the complaint.

#### 2. Jurisdiction

█ In considering a motion to dismiss for lack of personal jurisdiction, allegations in the complaint which are not controverted by the defendant's evidence must be accepted as true. *Delong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F.2d

843 (11th Cir.1988). Conflicts in the facts are resolved in the plaintiff's favor for determining if a *prima facie* case of personal jurisdiction exists. *Id.; Morris v. SSE, Inc.*, 843 F.2d 489 (11th Cir.1988). Therefore, plaintiff's version of the facts as presented by affidavit will be set forth below.

The defendant contacted plaintiff by telephone in January or February of 1988. The discussions leading up to the execution of the contract took place only by phone. No meetings were held in Georgia or New York. The president of plaintiff prepared the two-page agreement and mailed it to defendant. He signed it and mailed it back to Georgia, and it was executed by the plaintiff in Georgia. Clause ten of the contract provides that its provision shall be construed under the law of Georgia.

The defendant made two trips to plaintiff's office, in June 1988 and August 1988. Plaintiff's president's affidavit states that these trips were related to the performance of the contract or for the amendment of its terms. He states that defendant's compensation was renegotiated and this modification was agreed to and enacted during those meetings.[1]

All the defendant's sales efforts apparently took place in New York City. He has no office in Georgia, no customers in Georgia, and no property in Georgia. He apparently has no other connection to Georgia than the present contract with plaintiff.

## II. DISCUSSION

Defendant contends that plaintiff failed to adequately allege subject matter jurisdiction based on diversity, because the face of the complaint shows that the amount in controversy is less than $50,000.[2] Defendant also contends that because plaintiff appears to have attempted to serve defendant by the mail provisions under Fed.R. Civ.P. 4(c)(2)(C)(ii), any further service must be made under Rule 4(c)(2)(A) or (B) and that these provisions do not provide for extraterritorial service, and service under Rule 4(e) using the Georgia long-arm statute is not available. He further contends that his contacts with the state of Georgia are insufficient to establish constitutional minimum contacts in order to assert personal jurisdiction over him under the Georgia long arm statute. As his final point, he contends that venue should be transferred because of the convenience to the parties and witnesses.

### A. Subject Matter Jurisdiction

Plaintiff bases jurisdiction in this court on diversity of citizenship of the parties. 28 U.S.C. § 1332(a). That statute provides that the district courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000 and is between citizens of different states.[3] The defendant challenges the allegations in the complaint of the amount of controversy, arguing that the face of the complaint shows that the amount is less than $50,000.

In a declaratory judgment action, the amount in controversy is measured by the value of the object of litigation. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1977). The action should not be dismissed unless this court can say to a legal certainty that the

---

**1.** However, plaintiff has failed to provide any written documentation of any change in the contract terms. Defendant states that the June trip was to meet with plaintiff's principals, and was not in performance of the contract and no business was transacted at that meeting. He states that the August meeting was in order to discuss friction he was having with another of plaintiff's agents in New York, and again was not in performance of the contract and no modifications were negotiated or executed at that meeting.

**2.** Defendant also argued the complaint was defective because it alleged that he was a resident rather than a citizen of New York. Following the plaintiff's amendment, defendant has withdrawn that portion of his motion. Defendant's Renewed Motion to Dismiss.

**3.** This section was amended pursuant to Pub.L. 100–702, Title II, Sections 201, 203, 102 Stat. 4642, 4646, on November 19, 1988, to substitute $50,000 for the previous amount of $10,000. This amendment is applicable to any civil action commenced on or after the 180th day after November 19, 1988.

amount in controversy is less than the jurisdictional limit. *Id.* at 348, 97 S.Ct. at 2444; *Adolph Coors Co. v. Movement Against Racism,* 777 F.2d 1538 (11th Cir. 1985). To determine the value of the object of litigation, the court must look to the pecuniary effect an adverse decision will have on either party to the suit. *City of Moore v. Atchison, T. & S.F. Ry.,* 699 F.2d 507 (10th Cir.1983). The plaintiff is asking in the complaint that the court declare it was within its rights in terminating the contract, and owes no further compensation to the defendant. If this court rules that such termination was improper, or if the plaintiff owes more compensation to the defendant, it is clear that the amount owed by plaintiff would be greater than $50,000, especially considering the $27,000 already stated as in dispute in the complaint. Therefore, the plaintiff's allegation of jurisdiction is proper, and defendant's motion to dismiss under Rule 12(b)(1) is DENIED.

### B. *Service of Complaint*

■ Defendant contends that because plaintiff first attempted to serve him by mail, he was forever thereafter precluded from using the service provisions of state law under Rule 4(e). Under Rule 4(c)(2)(C)(ii), service by mail is authorized. If the acknowledgement form contained with the summons and complaint is not returned by the sender within twenty days after the date of mailing, service is to be made pursuant to personal service under Rule 4(c)(2)(A) (service by any non-party over eighteen years of age) or 4(c)(2)(B) (service by a United States Marshal or a person appointed by the court in certain situations).

However, this dispute is irrelevant in this case because the personal service requirements are triggered only if no acknowledgement is received by the sender within twenty days of the date of mailing. In the present case, personal service was effected before the twenty days to respond had

expired, so the personal service rules never came into play.[4] Furthermore, the Eleventh Circuit has held in a nearly identical situation that Rule 4(e) is permissive—it does not require a non-resident to be served only under Rule 4(e), nor that personal service under 4(c) must comply with the state long arm statute. *McDougald v. Jenson,* 786 F.2d 1465 (11th Cir.1986). Therefore, defendant's motion to dismiss for insufficiency of service of process is DENIED.

### C. *Personal Jurisdiction*

■ The plaintiff has the burden of proof to establish jurisdiction in this court. *Morris v. SSE, Inc.,* 843 F.2d 489 (11th Cir.1988); *Brown v. Flowers Industries, Inc.,* 688 F.2d 328 (5th Cir.1982), *cert. denied,* 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983). However, when the motion is to be decided at a preliminary stage of the proceedings without a hearing, the plaintiff need only show a *prima facie* case. *Delong Equipment Co.,* 840 F.2d at 843. The plaintiff must prove the jurisdictional facts by a preponderance of the evidence at a hearing or trial. *Brown,* 688 F.2d at 328. The court is obligated to deny the motion if the plaintiff alleges sufficient facts to support a reasonable inference that the defendant can be subjected to the jurisdiction of this court. *Jackam v. Hospital Corp. of America Mideast, Ltd.,* 800 F.2d 1577 (11th Cir.1986). Conflicts in the facts are resolved in plaintiff's favor for determining if a *prima facie* case exists. *Morris,* 843 F.2d at 489; *Delong,* 840 F.2d at 843; *Brown,* 688 F.2d at 328.

■ In a diversity action, a federal court can assert jurisdiction over a non-resident only to the extent permitted by the long arm statute of the forum state. *Complete Concepts, Ltd. v. General Handbag Corp.,* 880 F.2d 382, 388 (11th Cir.1989); *Southwire Co. v. Trans–World Metals and Co., Ltd.,* 735 F.2d 440 (11th Cir.1984). Application of this state law must also comply

---

**4.** There is some authority that service by mail under Rule 4(c)(2)(C)(ii) is subject to the territorial restrictions of Rule 4(f), and that the only way to serve a non-resident party is pursuant to

Rule 4(e). *Thermo–Cell Southeast, Inc. v. Technetic Industries, Inc.,* 605 F.Supp. 1122 (N.D.Ga. 1985).

with federal due process, through the minimum contacts test developed by the Supreme Court under *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. As defendant has only limited contacts with Georgia, this is a case where plaintiff must assert specific personal jurisdiction, based on the defendant's contacts with the forum state related to the cause of action, rather than general jurisdiction arising from continuous and systematic contacts with the forum state. *See Delong Equipment Co.*, 840 F.2d at 853.

### 1. Georgia Long Arm Statute

The first step in the jurisdictional analysis begins with O.C.G.A. § 9–10–91. This statute provides,

> A court of this state may exercise personal jurisdiction over any nonresident, ... as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:
>
> (1) transacts any business within the state; ....

The other sections of the long arm statute are not applicable in the present contract dispute. The Georgia courts have stated repeatedly that this section confers jurisdiction to the maximum extent allowable under due process. *First United Bank of Mississippi v. First National Bank of Atlanta*, 255 Ga. 505, 340 S.E.2d 597 (1986). The Eleventh Circuit has noted on several occasions that this section is coterminous with due process. *Complete Concepts*, 880 F.2d at 388.

An ambiguity has recently arisen within the Georgia Supreme Court cases on personal jurisdiction as to whether the long arm statute is to be interpreted as coterminous with due process. The Georgia Supreme Court in *Gust v. Flint*, 257 Ga. 129, 356 S.E.2d 513 (1987), reversed the judgment of the Georgia Court of Appeals in *Flint v. Gust*, 180 Ga.App. 904, 351 S.E.2d 95 (1986). The plaintiff had arranged by telephone to buy a truck from an out-of-state seller. He sent a deposit, but the seller later did not deliver the truck and tried to get plaintiff to accept another. The defendant did not return the deposit. This one transaction was the only contact defendant had with Georgia. The Supreme Court reversed the court of appeals decision which held that the trial court had personal jurisdiction over plaintiff's tort claim, under O.C.G.A. § 9–10–91(2), emphasizing that the long arm statute requires certain acts to be done within the state of Georgia, but that no such acts were committed in this case. Justice Gregory's concurring opinion indicated that he understood the decision to interpret O.C.G.A. § 9–10–91(2) to be more restrictive than constitutional due process.

The *Gust* decision has prompted at least one judge of this court to conclude that the Georgia long arm statute, and specifically O.C.G.A. § 9–10–91(1), is narrower than constitutional due process. *Evans v. American Surplus Underwriters Corp.*, No. 89–187 (N.D.Ga., October 10, 1989) (Camp, J.). Prior to *Gust*, in a thorough analysis of both Georgia and Eleventh Circuit opinions interpreting Georgia personal jurisdiction, Judge Murphy of this court concluded that the Georgia long arm statute's transacting business section did not extend to the limits of constitutional due process. *Irving Commercial Corp. v. Sound Floor Coverings, Inc.*, 595 F.Supp. 536 (N.D.Ga.1984).

Though these cases do raise a question as to whether the long arm statute is coextensive with constitutional due process, the Georgia courts have not yet repudiated the language in many cases that § 9–10–91(1) is coextensive with due process. The Georgia Supreme Court's most recent pronouncement on this section of the long arm statute, *First United Bank*, 255 Ga. at 505, 340 S.E.2d 597, stated that this section was coextensive with due process. Furthermore, *Gust v. Flint*, 257 Ga. at 129, 356 S.E.2d 513, was addressed to the tort sections of the long arm statute, and therefore the most serious question is addressed to those sections. Finally, the Eleventh Cir-

cuit has consistently interpreted the Georgia long arm statute as being coextensive with due process, most recently in *Complete Concepts*, 880 F.2d at 382. For purposes of this motion, therefore, the court will consider that the long arm statute is coextensive with due process. The analysis below, however, though basically one of constitutional due process, will consider and apply Georgia case law so that any anomalies between the Georgia long arm statute and constitutional due process can be addressed.

## 2. Constitutional Due Process

 The basic inquiry in a personal jurisdiction case such as this is whether the defendant has such minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158. The Supreme Court has repeatedly stated that the "constitutional touchstone" is whether the defendant purposefully established minimum contacts in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Once sufficient purposeful contacts have been shown, the court must consider whether the assertion of personal jurisdiction comports with fair play and substantial justice. *Id.* at 476, 105 S.Ct. at 2184.

 Two factors, foreseeability and purposeful availment, are considered when determining if there has been sufficient contact between the defendant and the forum. *Id.* The foreseeability that is critical to due process analysis is that the defendant's conduct in connection with the forum state is such that he would reasonably anticipate being haled into court there. *Id.* at 474, 105 S.Ct. at 2183, quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The purposeful availment requirement seeks to ensure that a non-resident defendant "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475, 105 S.Ct. at

2183. There must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King*, 471 U.S. at 474–75, 105 S.Ct. at 2183, quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Moreover, while an individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts with the forum, factors connected with the contract must be evaluated in determining whether the defendant purposely established minimum contacts with the forum. *Burger King*, 471 U.S. at 478–79, 105 S.Ct. at 2185. These factors include the prior negotiations and contemplated future consequences of the contract, the terms of the contract, and the parties' actual course of dealing.

 Once it has been concluded that a defendant purposefully established minimum contacts with the forum state, the contacts must be considered in light of "reasonableness" factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184. These factors include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Id.* at 477, 105 S.Ct. at 2184. Minimum contacts and the fairness prong work together to establish or deny jurisdiction. A strong showing of either can compensate for a lesser showing of the other. For example, a strong showing on the five fairness factors may serve to establish the reasonableness of jurisdiction on a lower showing of minimum contacts than ordinarily would be required. *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184.

 The contacts that connect defendant to Georgia are slim. He contacted plaintiff, a Georgia corporation. The par-

ties entered into an agreement, after negotiations were conducted over the telephone. The contract was executed by defendant in New York. Defendant made two trips to plaintiff's company, at which time a modification of the commission rates was negotiated and executed.

Merely contracting with a Georgia resident does not provide enough contacts to assert jurisdiction. *Burger King*, 471 U.S. at 478–79, 105 S.Ct. at 2185; *AIM International, Inc. v. Battenfeld Extrusion Systems, Inc.*, 116 F.R.D. 633 (M.D.Ga.1987).

The Eleventh Circuit has recognized that a single meeting in the forum state may constitute purposeful availment if it involves "significant negotiations of important terms" as opposed to the execution of a boilerplate contract. *Complete Concepts*, 880 F.2d at 388. Georgia courts have also ruled that negotiations in Georgia of significant aspects of contract terms does provide sufficient contacts to come under the transacting business section of the Georgia long arm statute. *Shea/Rustin, Inc. v. Home Fashion Guild, Ltd.*, 135 Ga.App. 88, 217 S.E.2d 405 (1975); *Delta Equities, Inc. v. Larwin Mortgage Investors*, 133 Ga.App. 382, 211 S.E.2d 9 (1974).

■ Considering the contacts as described above, taken in the light most favorable to plaintiff, and the legal framework, defendant does have the required minimum contacts with the state of Georgia in order for this court to assert personal jurisdiction. The Supreme Court recognizes that a substantial amount of business is transacted by mail and phone. *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184. If a commercial actor's efforts are purposefully directed toward the residents of other states, physical presence is not required in order to assert jurisdiction. *Id.* Though merely contracting with a non-resident is insufficient to invoke jurisdiction, a contract is the intermediate step which ties up prior negotiations and future consequences. *Id.* at 478, 105 S.Ct. at 2185. Therefore, those prior negotiations and future consequences in the course of conduct of the parties is the key to establishing

minimum contacts. In the instant case, Katz reached out beyond his state and contacted a company that was a resident of a sister state. After this contact, he voluntarily created a relationship with an out-of-state party that was to endure for an indefinite period of time. This connection with Georgia and the Georgia company was not random or fortuitous. The contract provision that provided that Georgia law would control the interpretation of the contract, though insufficient standing alone, further indicates that the defendant invokes the protection and privileges of Georgia law and demonstrates a deliberate affiliation with the forum and the foreseeability of litigation there. *Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185.

Moreover, the course of dealing between the parties over the fourteen months in which the contract was in force also indicates that jurisdiction is proper, though the parties have provided little in the way of information fleshing out their actual course of dealings during this time. The defendant's two visits to Georgia were connected to and related to the contractual relationship. These two visits certainly arose out of the relationship created between the two parties and formalized in the contract, even if they were not directly in performance of the contract. Also, this court must credit the plaintiff's version of the facts that negotiations took place at the meetings here, adding to the demonstration of minimum contacts, as the negotiations appear to be significant ones of important terms. *Shea/Rustin*, 135 Ga.App. at 88, 217 S.E.2d 405; *Williams Electric Co. v. Honeywell, Inc.*, 854 F.2d 389 (11th Cir. 1988).

The present factual situation is different from that examined by the Eleventh circuit in *Sealift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989 (11th Cir.1986). In that case, representatives of the defendant's insurers traveled to Florida to solicit the plaintiff's services to salvage a barge which was located in Costa Rica. The plaintiff went to Costa Rica to look at the barge, and telexed his proposed price to Costa Rica from Florida. The contract was

signed by the defendant in Costa Rica and the plaintiff in Florida. The Eleventh Circuit noted that the contract was a standard contract that was only slightly modified in its price terms. The contract also provided that English law would control, as opposed to the forum law, Florida. It was a standard contract, and entailed very little negotiations between the parties. Moreover, it covered a one-time performance, and a continuing relationship between the parties was not established. The relationship between the parties in *Sealift* was not the mutual kind of continuing relationship as is present in the instant case.

This case also differs from a recent Georgia Court of Appeals decision, *Mayacamas Corp. v. Gulfstream Aerospace Corp.*, 190 Ga.App. 892, 380 S.E.2d 303 (1989). In that case, a California corporation contracted with a Georgia corporation to buy an airplane. The negotiations were conducted over the telephone, by telex and in meetings in California. The contract was signed in California and Georgia. The contract provided for some personnel training and maintenance of the airplane in Georgia once it was delivered, and provided that Georgia law would be used to construe the contract. The defendant paid five percent of the purchase price, but later attempted to rescind the contract when it learned of certain misrepresentations. In that case, the defendant did not solicit business in the same way as in the present case. There was no subsequent course of conduct after the execution of the contract which tied the defendant to Georgia, nor did the future consequences contemplated by the contract ever arise, because the defendant rescinded the contract. The Georgia court found that the defendant did not reinforce any deliberate affiliation with Georgia. In the present case, the contract established a continuing and long-term relationship between the parties, and the course of conduct during the existence of the contract shows that the defendant reinforced his affiliation with the state of Georgia.

Georgia has an interest in seeing its citizens are afforded a forum to resolve commercial disputes, and the plaintiff certainly has an interest in obtaining convenient and effective relief in its home state. The *Burger King* reasonableness factors also support personal jurisdiction in this court.

Plaintiff has made a sufficient showing that the defendant is subject to personal jurisdiction in this court under both the Georgia long-arm statute and constitutional due process. Therefore, defendant's motion to dismiss for lack of personal jurisdiction is DENIED.

### D. *Motion to Transfer Venue*

Defendant seeks to transfer venue to the Southern District of New York for the convenience of non-party witnesses and for the convenience of the parties. The venue statute, 28 U.S.C. § 1404(a), permits a district court to transfer a civil action to any other district or division where it might have been brought for "the convenience of parties and witnesses, in the interest of justice." As stated by Judge Shoob in *Acrotube, Inc. v. J.K. Financial Group, Inc.*, 653 F.Supp. 470, 477 (N.D.Ga.1987),

> Absent clear justification, courts in this district have consistently refused to override a plaintiff's choice of forum, especially where, as here, the plaintiff has brought suit in its home district. To justify a transfer, the moving party must "demonstrat[e] that the balance of convenience and justice weighs heavily in favor of the transfer." Accordingly, when assessing a motion under section 1404(a), a court must consider whether a transfer would make it substantially more convenient for the parties to produce evidence and witnesses.

*Id.* at 477 (citations omitted), quoting *A.L. Williams and Associates v. D.R. Richardson and Associates*, 98 F.R.D. 748, 754 (N.D.Ga.1983).[5] The most important factor under § 1404(a) is the convenience of witnesses, and the moving party must make a

---

5. Contrary to defendant's assertion, the presumption in favor of a plaintiff's forum is not altered in a declaratory judgment action. *Mac-*

*Millan Bloedel, Inc. v. Hamric Transportation, Inc.*, 617 F.Supp. 447 (N.D.Ga.1985).

specific showing of inconvenience to witnesses. *J.I. Kislak Mortgage Corp. v. Connecticut Bank and Trust Co.*, 604 F.Supp. 346, 347 (S.D.Fla.1985) (requiring a "clear-cut and convincing showing by defendant that the balance of convenience weighs strongly in favor of the transferee court").

Defendant argues that the crucial witnesses in this case are the merchants and sales people with whom he dealt, who plaintiffs contend were the subject of his improper activities under the contract, and that they are all located in the New York vicinity. He contends that using deposition testimony would be unfair because the jury is required to assess their credibility. He further argues that the parties' convenience favors the transfer because of the relative financial strength between the two parties.

Though defendant contends that the New York merchants will be crucial to his case, he has not made a specific showing of this fact at this point in the litigation. Also, much of plaintiff's allegations concerned altered documentation, which obviously is available equally easily in New York or Georgia. At this point, prior to discovery, the court is unable to determine whether live witness testimony truly will be necessary in the trial of the action. Moreover, many of the primary witnesses will be plaintiff's officers and employees, located in Atlanta, and the documentation relied upon by plaintiff is located in Atlanta. For these reasons, defendant has not demonstrated the specific showing necessary to meet his heavy burden to transfer venue under § 1404(a). However, as it is possible that during the course of discovery the number and importance of non-party witnesses may become clearer, the court is willing to consider a renewal of this motion on a more specific and detailed showing by defendant.

### III. CONCLUSION

Defendant's motion to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, improper service of process, or

in the alternative to transfer venue, is DENIED.

SO ORDERED.