Chester CARROLL, Plaintiff,

v.

TEXAS INSTRUMENTS,
INC., Defendant.

Civil Action No. 2:11cv1037–MHT.

United States District Court,
M.D. Alabama,
Northern Division.

May 1, 2012.

Brian C. Claassen, Brian Christopher Horne, Craig S. Summers, Joseph S. Cianfrani, Knobbe, Martens, Olson & Bear, LLP, Irvine, CA, Tabor Robert Novak, Jr., Ball Ball Matthews & Novak PA, Montgomery, AL, for Plaintiff.

David R. Boyd, Griffin Lane Knight, Balch & Bingham, Montgomery, AL, Thomas B. Walsh, IV, Fish & Richardson P.C., Dallas, TX, for Defendant.

## OPINION AND ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff Chester Carroll, an Alabama resident, brought this patent-infringement suit against defendant Texas Instruments, Inc. ("TI"), which has moved to transfer the venue of this action from the Middle District of Alabama to the Northern District of Texas. Jurisdiction is proper pursuant to 28 U.S.C. § 1338(a). For the reasons that follow, TI's transfer motion will be denied.

### I.

Carroll is a resident of Camp Hill, in Tallapoosa County, Alabama (which is located in the Middle District of Alabama), and the inventor and owner of two patents. He developed these two patents primarily in Tallapoosa County during his time as a college professor at the University of Alabama and Auburn University and as president of a military academy in Camp Hill. Carroll alleges that TI directly and indirectly infringed his patents through the manufacture and sale of 23 analog-to-digital converters ("ADCs"), which fall into

two categories—the "High Speed ADC" accused products and the "Precision ADC" accused products.

TI is a Delaware corporation with its principal place of business in Dallas, Texas (which is located in the Northern District of Texas). TI is also a large international corporation: For 2011, it ranked 175 in the Fortune 500; had manufacturing, design, or sales operations in more than 35 countries; and generated $13.7 billion in revenue. Given its size, many of the engineers responsible for working on the products accused of violating Carroll's patents are located outside of Dallas: Many are in Tuscan, Arizona, while others are in Bangalore, India and Erlangen, Germany.

Carroll brought this lawsuit in the Middle District of Alabama, and, in particular, in the district's Northern Division, whose seat is Montgomery. TI seeks a transfer to the Northern District of Texas, and in particular, to the Dallas Division. Therefore, the venue dispute here is, at bottom, over whether the trial and other proceedings in this case should be in Montgomery or Dallas.

## II.

28 U.S.C. § 1404(a) authorizes a district court to transfer a civil action to any other district in which it might have been brought "for the convenience of parties and witnesses, in the interest of justice." Because federal courts normally afford deference to a plaintiff's choice of forum, the burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir.1989). A district court has "broad discretion in weighing the conflicting arguments as to venue," *England v. ITT Thompson Industries, Inc.*, 856 F.2d 1518, 1520 (11th Cir.1988), but must engage in an "individualized, case-by-case consideration of convenience and fairness."

*Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).

In resolving a § 1404(a) motion, the court first determines whether the action could have originally been brought in the proposed district of transfer and, if so, the court then weighs the convenience of. the parties and considers interests of justice to determine whether a transfer is appropriate. *C.M.B. Foods, Inc. v. Corral of Md. Ga.*, 396 F.Supp.2d 1283, 1286 (M.D.Ala. 2005) (Thompson, J.). Here, there is no question that this case could have been originally brought in Dallas.

■ Accordingly, the court's inquiry focuses solely on whether the balance of justice and convenience favors transfer. In making this determination, courts generally consider a number of non-exhaustive factors, including the following: the plaintiff's initial choice of forum; the convenience of the parties; the relative means of the parties; the convenience of the witnesses; the relative ease of access to sources of proof; the availability of compulsory process for witnesses; the location of relevant documents; the financial ability to bear the cost of the change; and trial efficiency. *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n. 1 (11th Cir. 2005); *Fedonczak v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1856080, at *2 (M.D.Ala. May 4, 2010) (Fuller, C.J.); *C.M.B. Foods*, 396 F.Supp.2d at 1286–87.

■ *The Plaintiff's Choice of Forum.* Carroll resides in the venue chosen for litigation: the Northern Division of the Middle District of Alabama. Indeed, Camp Hill, his home, is only about 65 miles from Montgomery, where his case, if not transferred, will be tried. His choice of venue is "entitled to considerable weight and should not be disturbed unless other factors weigh strongly in favor of transfer." *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 333

(E.D.N.Y.2006) (Spatt, J.); see *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253 (11th Cir.1996) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.") (internal quotes and citation omitted).[1]

■ *Convenience and Relative Means of the Parties.* Taking the relative means and convenience of the parties together, the court cannot conclude that these factors weigh in favor of a transfer. On the one hand, while Carroll does not argue that a transfer to Dallas would create a *financial* burden (perhaps in part because his counsel are located in California and would have to travel regardless of whether the litigation venue were in Montgomery or Dallas), he does contend that he would be *personally* inconvenienced to a great extent. Carroll is 74 years old, and, in the past year, has been given radiation treatment for cancer. While his cancer is now in remission, he must follow-up quarterly to monitor his cancer. He also takes care of his adult son's family (a wife and two children), due to his son's recent serious injury. Because of these circumstances, Carroll has left the State of Alabama only once in the past three years. The court, therefore, finds factually not only that Montgomery is more convenient for Carroll but also that forcing him to travel to Dallas to pursue this litigation, which may include several in-court pretrial proceedings as well as trial, would be significantly burdensome.

On the other hand, with its principal place of business in Dallas and its counsel based there, litigating the case in the Northern District of Texas is more convenient for TI. Nevertheless, the court is unaware of any circumstance that would make litigating this case in Alabama significantly burdensome for TI.

On balance, therefore, given the substantial personal inconvenience for Carroll to litigate this case in Texas and given that the parties' relative financial means do not point one way or the other, the court finds that the convenience and means of the parties weigh significantly against transfer. *See Kolodziej v. Mason*, 2011 WL 2009467, at *7 (N.D.Ga. May 20, 2011) (Carnes, C.J.) ("When evaluating the relative convenience of the parties, [t]ransfer should be denied if it would merely shift inconvenience from one party to another.") (internal quotes and citations omitted).

*Convenience of Witnesses.* The "convenience for and cost of attendance of witnesses," *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed.Cir.2009), are an important factor and, for nonparty witnesses, are sometimes dubbed the single most important factor in determining whether the transfer of venue is proper. *See, e.g., LaPenna v. Cooper Tire & Rubber Co.*, 2011 WL 2669469, at *5 (M.D.Ala. July 7, 2011) (Fuller, J.). Because this factor may be so important, some courts view it as helpful if the party seeking transfer "clearly specif[ies] the . . . witnesses to be called and . . . make[s] a general statement of what their testimony will cover." *Neil Bros.*, 425 F.Supp.2d at 329. After that, the reasoning continues, a district court may

---

1. This case, therefore, can be distinguished from those where, because "a plaintiff brings its charges in a venue that is not its home forum," the plaintiff's "choice of forum is entitled to less deference." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir.2011); *see also RSUI Indem. Co. v. Sealy Realty Co., Inc.*, 2012 WL 235520, at *3 (M.D.Ala. Jan. 25, 2012) (Thompson, J.) (distinguishing between instances where a "local entity seek[s] to litigate th[e] case on its home turf" or where the forum has some connection to the dispute and thus where "considerable deference would be due" and those instances where the plaintiff brings "suit outside its home forum and in a district with no connection to the dispute").

be able to "assess the relevance and materiality of the information the witness may provide." *Genentech*, 566 F.3d at 1343.

■ In any event, a court "should not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum." *Neil Bros.*, 425 F.Supp.2d at 329 (internal quotes and citation omitted); *see also Dale v. United States*, 846 F.Supp.2d 1256, 1257 (M.D.Fla. 2012) (Presnell, J.) (noting that the court "will not simply 'tally the number of witnesses' in each prospective forum to determine which is more convenient"); *Microspherix LLC·v. Biocompatibles, Inc.*, 2012 WL 243764, at *3 (S.D.Fla. Jan. 25, 2012) (Moore, J.) ("In assessing the convenience of the witnesses, the mere length of an individual parties' list of potential witnesses is not of great significance.").[2]

And the term witnesses may have two different practical meanings. First, there are the witnesses who may have any conceivable knowledge about any conceivable issue in the litigation. A lawyer's initial list of these witnesses may therefore go on for pages. Prior to trial, these witnesses are usually questioned informally and, if they have significant material information, questioned formally (through depositions, affidavits, etc.) in the communities where they live or work. For the most part, the trial venue does raise a convenience issue for them.[3] Second, there are witnesses who are likely to be called at trial and for whom the convenience of the trial venue can be an issue. This list comes from the first group and can often end up being substantially smaller, often fewer than a handful even though the first group was quite large. On a transfer motion, all that the court is asking the parties to do is to make an educated guess as to the size of the second group, that is, a guess with some articulable reason to back it up.

Further, as stated, courts often distinguish between party witnesses and non-party witnesses: "Party witnesses are the parties themselves"; they are often viewed as "more willing to testify in a different forum," a view which often does not apply to non-party witnesses. *Ramsey v. Fox News Network, LLC,* 323 F.Supp.2d 1352, 1357 (N.D.Ga.2004) (Thrash, J.). Employees of a company, though not technically parties, may be so closely aligned with their company that they may be viewed as "party witnesses," *see, e.g., Merial Ltd. v. Intervet, Inc.,* 2010 WL 942294, at *2 (M.D.Ga. Mar. 11, 2010) (Land, J.); *Ramsey,* 323 F.Supp.2d at 1354–56; *Gundle Lining Const. Corp. v. Fireman's Fund Ins. Co.,* 844 F.Supp. 1163, 1166 (S.D.Tex. 1994) (Crone, M.J.).[4] Accordingly, the

---

2. While a movant is not required to identify "key" witnesses, *Genentech*, 566 F.3d at 1343–44, doing so may significantly aid a defendant's efforts in meeting its burden of demonstrating that venue should be transferred, and courts frequently focus on such "key witnesses." *See, e.g., Dale,* 846 F.Supp.2d at 1257–58; *Kolodziej,* 2011 WL 2009467, at *7 ("The convenience of the witnesses is one of the most important factors in evaluating a motion to transfer venue, with the main focus on "key witnesses." ").

3. To be sure, pretrial discovery disputes involving witnesses do arise. But these disputes rarely require a witness's appearance at court.

4. Alternatively, some courts view employee witnesses as "non-party" witnesses, but treat them in the same fashion as party witnesses: the significance of these witnesses' convenience is "diminished when the witnesses, although in another district, are employees of a party and their presence at trial can be obtained by that party." *Trinity Christian Center of Santa Ana, Inc. v. New Frontier Media, Inc.,* 761 F.Supp.2d 1322, 1327 (M.D.Fla. 2010) (Wilson, M.J.); *see also Bennett Engineering Group, Inc. v. Ashe Industries, Inc.,* 2011 WL 836988, at *2 (M.D.Fla.2011) (Antoon, J.).

convenience of a nonparty witness may hold more weight than that of a party witness. *ASD Specialty Healthcare, Inc. v. Letzer*, 2010 WL 2952573, at *4 (M.D.Ala. July 26, 2010) (Watkins, J.) ("The convenience of non-party witnesses receives considerably more weight than the convenience of parties or party-witnesses."); *Kolodziej*, 2011 WL 2009467, at *7.

██ Here, the only nonparty witnesses expressly identified as such are the attorneys who prosecuted the patents-in-suit before the U.S. Patent and Trademark Office and who are located in Atlanta, Georgia. At just over 160 miles and a two-to-three hour drive for theses witnesses, Montgomery is much closer and easier to access than Dallas, which is almost 800 miles away and would almost certainly require these witnesses to fly and most likely stay over night even for a one-day trip. Thus, this factor tips heavily in favor of keeping this suit in the Middle District of Alabama.[5]

As for party witnesses, on Carroll's side the only witness actually identified, and almost guaranteed to testify at trial, will be Carroll himself, who, as stated, resides in the Middle District of Alabama and who, because of his personal and family circumstances, has been able to leave the State only once in the last three years. For Carroll, therefore, trial in Dallas would pose a substantial hardship.

TI has pointed to scores of employee-engineers scattered about the globe, who are closely aligned with the company in this action and whom the court will therefore treat as "party witnesses." However, and more significantly, TI has not identified actual witnesses but rather has point-

ed to groups of its engineers, their work, and their general locations. (However, regardless as to whether these employee-engineers are treated as party or nonparty witnesses, the outcome here would be the same. The question, discussed later, of which and how many of these employees are likely trial witnesses applies regardless of whether they are treated as party or non-party witnesses.)

Specifically, based upon numbers from the fourth quarter of fiscal-year 2011, TI declares that, of the approximately 80 engineers in the High Speed ADC product group (covering 20 of the 23 accused products), approximately 45 are in Dallas and 35 are in India. TI goes on to state that, for those in Dallas, the *group* of engineers "control[s] the technical support, marketing, business management, and product line management for the High Speed ADC accused products and the design and developmental testing for a portion of the High Speed ADC Accused Products," TI Br. 3 (Doc. No. 19, at 3), and the *group* of 35 engineers in Bangalore "ha[s] responsibility for the design and developmental testing for a portion of" the High Speed ADC accused products. Venable Decl. 3 (Doc. No. 19–1, at 4). However, after making these broad and vague statements, TI has not gone the further step of helping the court to make an educated guess of which and how many of these employees will be likely trial witnesses. For example, it has not provided the information each, or even some, of these engineers might have and what TI anticipates any particular engineer might testify about regarding the accused products. TI has not identified which of these individuals can testify as to the actual products at issue in

---

5. Given that no other nonparty witnesses have been identified and the fact that the Atlanta attorneys are more than 100 miles from both this court (in Montgomery) and the transferee venue (in Dallas), no nonparty wit-

ness may be compelled through either court's subpoena power to attend the hearing. *See* Fed.R.Civ.P. 45(b)(2)(C). This factor is neutral.

this case, or even whether it will likely be all of them or only a few; TI has not specified which "portion" of the products any particular engineer will have design and development information about; nor has TI clarified which of these engineers were even at the plant when the relevant products were designed. *Cf. Baker v. RBS Worldpay, Inc.*, 2010 WL 4065074, at *4 n. 8 (S.D.Ala. Oct. 15, 2010) (Steele, C.J.) (explaining that, when examining the convenience of the witnesses, "courts place a premium on specific information concerning the identity and location of the affected witnesses, and the significance of their potential testimony"). The fact that a cadre of 80 engineers works in a product group does not, on the basis of that fact alone, necessarily mean that all of them are likely trial witnesses with material and reasonably nonduplicative knowledge[6] about the products at issue here.[7] Accordingly, for the High Speed ADC products, the court cannot adequately determine which or how many engineers are likely trial witnesses.

The same problem applies to engineers identified as potential witnesses from TI's Precision ADC group (covering the remaining three of the 23 accused products). Of this group, only 10 of 65 were located in Dallas as of the fourth quarter of 2011, with 28 others in Arizona and the remainder in either India or Germany. As before, TI's information with regard to these engineers' potential testimony is somewhat vague and over-inclusive: "These individuals are part of teams that are responsible for the development of" the Precision ADC accused products, and these "teams" are responsible for developing one of the three products and "potentially" the other two in the Precision ADC group. TI Br. 4–5 (Doc. No. 19, at 4–5). Especially in the context of a company as large and dispersed as TI, a broad list of engineers in groups at various facilities (some of whom may have no knowledge of material facts relevant to this case) that is unaccompanied by any means to determine which or how many are likely witnesses leaves the court wanting in its ability to analyze truly the actual interests at stake and thus whether the convenience-of-witnesses factor weighs in favor of transfer. *Cf. American Standard, Inc. v. Bendix Corp.*, 487 F.Supp. 254, 262 (W.D.Mo.1980) (Becker, J.) ("[I]f the party moving for transfer under § 1404(a) merely makes a general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be, the motion for transfer based on convenience of witnesses will be denied.").

To be sure, TI's statement that some "engineers/witnesses with knowledge of the operative facts are undeniably centered in Dallas" may be true. Reply Br. 3 (Doc. No. 26–1, at 4). The problem, however, as stated, is that TI's identification of only "groups of engineers" makes it impossible to determine how many of these engineers are reasonably likely to be witnesses and how many are located in Dallas, and therefore makes it impossible to evaluate the convenience factor. A specific showing of reasonably likely inconvenience would be more helpful here. *See Electronic*

---

**6.** The court refers to witnesses with reasonably non-duplicative, rather than just non-duplicative, knowledge because a party may sometimes want to present duplicative witnesses on a hotly disputed or close factual use.

**7.** In its reply brief, TI seems to suggest, at times, that all members of these groups have this knowledge. The declaration in support of TI's motion, however, does not aver that all of these engineers possess such knowledge; it speaks in terms of "groups," with possible or potential knowledge, and does not allege that all engineers have actual knowledge relevant to the products at issue in this suit. *See* Venable Decl. 3–5 (Doc. No. 19–1, at 4–6).

*Transaction Network v. Katz,* 734 F.Supp. 492, 501–02 (N.D.Ga.1989) (Forrester, J.).

Moreover, knowing which and how many of the employees identified by TI are likely trial witnesses is important not just to whether Carroll should have to go to Dallas or TI's Dallas employees should have to come to Montgomery. For one, in relative terms, the travel inconvenience confronted by international witnesses could be significantly different from that confronted by domestic witnesses, and, in particular, that confronted by domestic witnesses located near one of the two potential venues. Because international witnesses will have to travel a long distance regardless, the difference for them between Montgomery and Dallas may be marginal. *Cf. Genentech,* 566 F.3d at 1344 ("The witnesses from Europe will be required to travel a significant distance no matter where they testify."); *Neil Bros.,* 425 F.Supp.2d at 330 (concluding that "it is only slightly less convenient to travel from the United Kingdom to New York than it is to travel from the United Kingdom to Tennessee."). By contrast, the relative burden imposed on domestic witnesses by having to travel to a different domestic forum (as plaintiff Carroll would have to do if the court were to grant the transfer motion or as TI's Dallas-based employee-witnesses would have to do if the motion were denied) can be significant.

Thus, this relative-burden viewpoint, which looks at the additional burden imposed by traveling to a forum by witnesses that will have to travel significant distances regardless and compares that against the burden on those who may or may not have to travel at all, figures prominently in the court's analysis. However, as mentioned, TI does not fully address how many of its engineers are likely trial witnesses who will have to travel internationally regardless (those in India and Germany); who will have to travel domestically regardless (those in Arizona); and who will not have to travel at all if there is a transfer (those in Dallas).

To be sure, from TI's identification of witness groups, the court can get some impression (though rooted more in possibility than probability) of the burden TI may have to bear if the case is tried in Montgomery, but the court must also be sensitive to two other things. First, reliance on broad group identifications (without any culling down to those who are reasonably likely to testify) can come very close to mere head-counting, which could put a large party with many employees at a significant advantage over a small party with few or no employees. Second, this court is confronted with specific evidence of the significant burden that a Dallas trial would pose to Carroll. As stated, because of his personal and family circumstances, Carroll has been able to leave Alabama only once in the last three years. Carroll's specific evidence of a substantial burden is more compelling than the generalized, possibility-based feeling that TI's evidence gives, especially given that the number of likely witnesses with relevant, material, and reasonably non-duplicative information might very well still end up quite small.

The court would emphasize that it is not saying that a party must identify with certainty all of its potential witnesses, nor even that a party must present to the court a full summary of the testimony of all its witnesses, for litigation at the motion-to-transfer stage is often much too early in the game to ask that. What the court is saying is that the parties must help it pierce through broad, indefinite contentions about what witnesses may be called so that the court may make its own educated guess, as best it can, as to what witnesses are likely to be called. Courts that have suggested that parties provide summaries of witness testimony have, ob-

viously, used that requirement to help make that guess, especially when a party has essentially dumped on the court a list all or a part of its company phone book. Requiring such summaries may not be the only means to reach that goal. But, absent such summaries, parties must make some effort through other means to help the court.[8]

Here, this court sincerely doubts that TI will call all of the many witnesses from the groups it has identified. Indeed, the court is certain that the number of witnesses TI will call will more likely than not be much, much smaller than the two groups TI has identified. But, how much smaller, TI has offered no help in determining.

In sum, for witnesses in general (both party and nonparty), the court cannot say that TI has adequately demonstrated that Dallas is the more convenient forum. Without question, a Montgomery trial would be more convenient for the Atlanta witnesses. And, more importantly, the burden that a Montgomery trial would pose to TI is too indeterminate and non-specific to warrant a transfer in the face of the specific and substantial burden that a Dallas trial would pose to Carroll.

■ *Access to Evidence.* The location of relevant evidence and documents weighs in favor of transfer. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.'" *Genentech,* 566 F.3d at 1345 (quoting *Neil Bros.,* 425 F.Supp.2d at 330). Accordingly, as TI argues, much of the evidence will be located in Dallas, where TI has its hub of operations, or either its offices in Tuscan, Bangalore, or Erlangen. TI acknowledges

that a significant amount of documentary evidence could be located in any of these three non-Dallas locations, but argues that, even if the evidence is located outside of Dallas, given its intra-company network, many of the documents can be securely and more conveniently accessed from Dallas.

At the same time, however, the court recognizes that, in the same way that technology will enable TI to access documents in foreign locations from Dallas, technology has also reduced the burden that will be imposed by litigating in the current forum; indeed, if needed for trial, many documents can be sent electronically at no burden and be printed, as they would have to be regardless, locally. Still, despite technology, the incremental burden based upon the location of the documents remains cognizable. *Genentech,* 566 F.3d at 1346. In the end, though this factor, as stated, weighs in favor of transfer and though technology has not made this factor a complete nullity, it changes the analysis "only minimally." *Neil Bros.,* 425 F.Supp.2d at 325; *see also Polyform A.G.P. Inc. v. Airlite Plastics, Co.,* 2010 WL 4068603, at *4 (M.D.Ga. Oct. 15, 2010) (Land, J.) (agreeing that the physical location of relevant documents "is not particularly significant given the widespread use of electronic document production"); *but see Microspherix,* 2012 WL 243764, at *3 ("In a world with fax machines, copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant.").

■ *Locus of Operative Facts.* In patent-infringement cases, the "'locus of operative facts usually lies where the allegedly infringing product was designed,

---

8. Marshaling such evidence, even at the early stage of litigation, should not be that difficult for attorneys who have years of patent-litigation experience. Early on, and although they

be able to say for sure, such attorneys should have some idea of how factually complex and difficult a case is likely to be and how many witnesses are likely to be called at trial.

developed, and produced.'" *Neil Bros.*, 425 F.Supp.2d at 331; *see Medien Patent Verwaltung AG v. Warner Bros. Entm't, Inc.*, 749 F.Supp.2d 188, 191–92 (S.D.N.Y.2010) (Cedarbaum, J.) ("'Operative facts in a patent infringement action include facts relating to the design, development, and production of a patented product.'") (quoting *Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F.Supp.2d 370, 375 (S.D.N.Y.2006) (McMahon, J.)); *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F.Supp.2d 433, 439 (S.D.N.Y.2000) (Sweet, J.) (same); *Arete Power, Inc. v. Beacon Power Corp.*, 2008 WL 508477, at *5 (N.D.Cal.2008) (Brazil, M.J.) (same). This is so because, in a patent-infringement case, the "design, development, marketing, manufacture, and sale" of the accused products will often be the primary issues for litigation. *Polyform*, 2010 WL 4068603, at *5; *see id.* at *5 & n. 2 (explaining that the locus of facts or "center of gravity" for a patent-infringement case is where the accused product was designed and developed). This factor weighs in favor of transfer. While it is true that Carroll designed his patents in this district, none of the design, manufacture, or development of any of the 23 accused products took place in Montgomery. Instead, all of it occurred in TI's offices, the largest of which is in Dallas. Thus, even though not all of the planning and development took place in Dallas (some took place in Arizona, Germany, and India), the locus of facts appears to be more associated with Texas than Alabama. *Cf. Pergo, Inc. v. Shaw Industries, Inc.*, 2003 WL 24129779, at *3 (N.D.Ga. Sept. 16, 2003) (Martin, J.) ("For patent infringement actions, the center of the accused activity is the locus of operative facts: 'The trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its pro-duction.'") (quoting *AMP Incorporated v. Burndy of Midwest, Inc.*, 340 F.Supp. 21, 24–25 (N.D.Ill.1971) (Parsons, J.)).

*Local Interest.* Lastly, the court considers the local interest in having this dispute resolved in either Montgomery or Dallas. To analyze this factor, the court considers the "factual connection" the case has between both venues. *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F.Supp.2d 761, 769 (E.D.Tex.2009) (Davis, J.). Here, the local interest in having the case decided at "home" is evenly split. On one hand, there is a clear factual connection to Alabama in that Carroll designed, invented, and registered his patents as a result of his work in Alabama's public universities and while living in this district. In this respect, Alabama is deeply connected to (and invested in) these patents, which makes their vindication, if infringed, a matter of local concern. At the same time, given that, at least in part, TI designed and developed the accused products in Dallas, where TI has its principal place of business, Texas also has an localized interest in trying the case at home. *Id.* This factor is neutral.

■ *Balance of Factors.* At the end of the day, considering the totality of the circumstances, the court cannot conclude that the case should be transferred to the Dallas. While it is true that the location of documents favors transfer; that some (but not all) of the operative facts do as well; and that some (but certainly far from all) of TI's witnesses are located in Dallas, TI has not met its burden of demonstrating that justice and fairness require a transfer in this case.

Instead, the fact that the trial of this case in Dallas would be extremely difficult for Carroll in light of his and his family's personal circumstances; that the relative means of the parties weighs against transfer; that convenience for the Atlanta attor-

neys weighs against transfer; that there are local interests at stake; and that there must be some respect for Carroll's choice of forum, all counsel against transfer.

Moreover, even assuming that the weighing of factors could be viewed as supporting transfer, it would be "only slightly." *Fedonczak*, 2010 WL 1856080, at *4. In such a case, and giving deference to Carroll's choice of forum, the court would conclude that transfer would not be in the interest of justice. *See id.* (citing *Johnston v. Foster–Wheeler Constructors, Inc.*, 158 F.R.D. 496, 503 (M.D.Ala.1994)) (Albritton, J.) ("If the transfer would merely shift the inconvenience from one party to the other, or if the balance of all factors is but slightly in favor of the movant, the plaintiff's choice of venue should be given deference." (inner quotations omitted)); *cf. In re Xoft, Inc.*, 435 Fed. Appx. 948, 949 (Fed.Cir.2011) (denying a petition for mandamus seeking a transfer of venue where the district court "found that the plaintiffs' choice of forum favored denying the transfer motion and that additional private interest factors either weighed neutral or slightly favored transfer," and that other "public interest" factors were either neutral or did not "strongly favor transfer").

\* \* \*

Accordingly, it is ORDERED that defendant Texas Instruments, Inc.'s motion to transfer venue (Doc. No. 19) is denied.